**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Elsa Victoria de la Cruz,

Petitioner,

v.

The United States of America, et al.,

Respondents.

Case No.: 2:20-cv-01712-APG-NJK

**Order Granting Habeas Relief**

On September 16, 2020, petitioner Elsa Victoria de la Cruz filed a habeas corpus petition under 28 U.S.C. § 2241 seeking relief from her continued detention by Immigration and Customs Enforcement (ICE). ECF No. 1. I grant the petition.

BACKGROUND

Born on November 1, 1982, de la Cruz is a native and citizen of Mexico who lawfully entered the United States in 1984 as a nonimmigrant B-1/B-2 visitor in 1984. ECF No. 1 at ¶ 7. On January 13, 2020, de la Cruz was arrested by Las Vegas police on an outstanding warrant and transferred to ICE custody, where she currently remains. *Id.* at ¶ 34.

I. Criminal Proceedings

Between July 2018 and August 2019, de la Cruz was involved in three instances of domestic violence with her ex-husband that resulted in intervention by the Las Vegas police. ECF No. 1 at ¶¶ 24–39. In each of those instances, she was the initial aggressor or at least a mutual combatant. *Id.* As a result, de la Cruz was convicted in state court on three counts of battery and one count of trespassing. *Id.*; ECF No. 11-3 at 4-5.

II. Immigration Proceedings

On January 14, 2020, the Department of Homeland Security (DHS) initiated removal proceedings against de la Cruz. ECF No. 1 at ¶ 37. She was initially charged with removability under Immigration and Naturalization Act (INA) § 212(a)(6)(A)(i), as an alien present in the United States without inspection. *Id*. at ¶ 38.

On February 10, 2020, de la Cruz filed a motion for bond reconsideration asking to be released on a $5,000 bond. *Id*. at ¶ 44. After a hearing on February 20, 2020, the immigration judge (IJ) denied de la Cruz's request for release on bond based on a "finding that she had not met her burden of proving she is not a danger to the community." ECF No. 11-3 at 4. In relevant part, the IJ's decision states:

> A detained alien requesting release on bond bears the burden of proving by clear and convincing evidence that she does not pose a danger to the community and is not a flight risk. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); 8 C.F.R. § 1236.1(c)(3). In *Matter of Guerra*, the Board made clear that the Court "has extremely broad discretion in deciding whether or not to release an alien on bond." 24 I&N Dec. at 39. The Board provided an extensive, but not exhaustive, list of factors that the Court may consider when determining whether an alien should be released on bond. *Id*. at 39-40. These factors include, among other things, the alien's family ties in the United States and the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses. *Id* at 40. The Court "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.*
>
> Here, the Court considered the Respondent's three domestic violence arrests between 2018 and 2019. The Respondent admitted that each of these arrests resulted from physical altercations between the Respondent and her former husband. According to evidence in the record, two of those arrests resulted in a conviction for simple battery, while one remains pending before the state court.
>
> After considering all evidence in the record, the Court found that the Respondent's demonstrated recidivism, the recency of her arrests, and the inherent dangerousness of her crimes, altogether establish that she represents a danger to the community. *See Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) ("An Immigration Judge should only set bond if [she] first determines that the alien does not present a danger to the community."). The Court recognized

> the Respondent's ties to the United States, including five United States citizen, minor children. However, the Court found that these facts do not outweigh the danger the Respondent poses to the community. Accordingly, the Court found that Respondent's ongoing detention is justified and denied her request for bond.

ECF No. 11-3 at 4-5.

Also on February 20, 2020, de la Cruz filed an application for cancellation of removal and adjustment of status for certain non-permanent residents. ECF No. 1 at ¶ 44. A hearing on that application was scheduled for July 31, 2020. *Id*.

At a hearing on April 2, 2020, de la Cruz established an inspected admission in response to DHS's original charge. *Id*. at ¶ 39. The DHS conceded an inspected entry and amended its notice to appear to charge de la Cruz with removability under INA § 237(a)(l)(B), as an alien present in the United States after admission as a nonimmigrant under section 101(a)(15) of the Act, who remained in the United States for a time longer than permitted. *Id*. She conceded the charge. *Id*.

On April 14, 2020, de la Cruz filed an appeal of the denial of bond with the Board of Immigration Appeals (BIA). *Id*. at ¶ 46.

On July 31, 2020, the IJ denied de la Cruz's application for cancellation of removal for certain non-permanent residents. *Id*. at ¶ 41. She appealed that denial to the BIA on August 28, 2020. *Id*. at ¶ 42.

On November 3, 2020, the BIA dismissed de la Cruz's appeal of the IJ decision denying her request for release on bond. ECF No. 15-1. In relevant part, the BIA's decision states:

> The respondent was placed into the custody of the DHS on or about January 14, 2020. On February 10, 2020, she filed a motion seeking a change in her custody status. On February 20, 2020, the Immigration Judge issued an order denying the respondent's motion, because the respondent's convictions on two counts of battery reflected that she posed a danger and should be held at no bond. The respondent appealed that determination, arguing that the convictions are not

> indicative of her dangerousness because they are limited to the context of contested divorce and custody proceedings with her ex-husband and that she has no other convictions. (Respondent's Br. at 8-12; l 6-22). She also contends on appeal that the Immigration Judge improperly placed the burden of proof on her to prove that she is not dangerous, when the burden actually lies with the DHS. *Id*. at 14, 1 7. Finally, she contends that she is eligible for relief from removal. *Id* at 12-13.
>
> We will adopt and affirm the Immigration Judge's decision for the reasons stated in the March 32, 2020, bond memorandum. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994). We find no clear error in the Immigration Judge's underlying factual findings and affirm the resulting conclusion that the convictions are indicative of danger. Moreover, the respondent's argument that the Immigration Judge imposed an improper burden of proof is misplaced. In bond proceedings arising under section 236(a) of the Immigration and Nationality Act, 8 U.S.C. §l226(a), the respondent bears the burden of proving that she does not pose a danger to the community or a flight risk that cannot be mitigated by the imposition of reasonable bond. *See Matter of Adenji*, 22 I&N Dec. 1102, l l l].13 (BIA 1999). The cases cited by the respondent that stand for the proposition that the DHS should bear this burden apply only where an alien has been subjected to prolonged detention or where the imposition of this standard is otherwise dictated by court order.

*Id*. at 3.

III. Federal Habeas Proceedings

De la Cruz presents a single ground for relief in her federal habeas petition: a violation of her rights under the Fifth Amendment's Due Process Clause based on her ongoing detention without a constitutionally sufficient bond hearing. ECF No. 1 at 24-25. According to de la Cruz, her bond hearing was deficient because the IJ placed the burden of proof on her to demonstrate that she was not a flight risk or a danger to the community instead of requiring the DHS to make the reverse showing by clear and convincing evidence. *Id*. at 14-25. In her request for relief, she asks this court to, among other things, grant a writ of habeas corpus directing the respondents to immediately release her from custody or order a new bond hearing in which the government

bears the burden of proof to show, by clear and convincing evidence, that she is presents a flight risk or a danger to the community. *Id*. at 25-26.

The respondents moved to dismiss the petition, arguing that de la Cruz failed to exhaust her administrative remedies, the IJ applied the correct burden of proof at the bond hearing and correctly found her to be a danger to the community, and de la Cruz's continued detention is constitutional. ECF No. 11. I denied the motion without prejudice until de la Cruz exhausted her administrative remedies with respect to the bond determination. ECF No. 14 at 5. After the BIA issued the decision excerpted above, I lifted the stay and directed the respondents to show cause why habeas relief should not be granted, considering this court recently granted relief in a factually similar case raising a similar challenge. ECF No. 17 (citing *Vargas v. Wolf*, Case No. 2:19-cv-02135-KJD-DJA, 2020 WL 1929842, (D. Nev. Apr. 21, 2020). The respondents have filed their response to the order to show cause (ECF No. 18), and de la Cruz has replied (ECF No. 19).

## DISCUSSION

### I. Federal Habeas Jurisdiction

Federal district courts may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A non-citizen petitioner held in custody under removal proceedings may "bring collateral legal challenges to the Attorney General's detention authority ... through a petition for habeas corpus." *Casas-Castrillon v. DHS*, 535 F.3d 942, 946 (9th Cir. 2008). Federal district courts have habeas jurisdiction under § 2241 to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). Although the Attorney General's "discretionary judgment" is

expressly precluded from judicial review, 8 U.S.C. § 1252(g), "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Id.* at 1202 (internal quotation marks and citation omitted).

II. Detention of Non-Citizens Under the INA

The INA provides a "complex statutory framework of detention authority," codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a non-citizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, § 1226(a) governs detention during the pendency of a non-citizen's removal proceedings, and § 1231 governs detention following the issuance of a final removal order. The DHS has discretionary authority under § 1226(a) to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c) for whom detention is mandatory. In this case, de la Cruz is detained pursuant to § 1226(a).

When a non-citizen is arrested and taken into immigration custody under § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, a § 1226(a) detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1).

Section 1226(a) is silent as to which party bears the burden of proof at a bond hearing and the quantum of evidence necessary to satisfy that burden. But immigration regulations and the BIA have interpreted § 1226(a) as placing the burden on the detainee to show "to the

satisfaction of the [IJ] that he or she merits release on bond." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); 8 C.F.R. § 236.1(c)(8) (stating that a § 1226(a) detainee may be released on bond if he or she "demonstrate[s] to the satisfaction of the [IJ] that such release would not pose a danger to property or persons," and he or she "is likely to appear for any future proceeding"). An IJ may consider several discretionary factors to make this determination, but the "*Guerra* factor most pertinent to assessing dangerousness" is the detainee's "'criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" *Singh*, 638 F.3d at 1206 (citing *Guerra*, 20 I. & N. Dec. at 40).

If § 1226(a) detainees "are dissatisfied with the IJ's bond determination, they may file an administrative appeal so that 'the necessity of detention can be reviewed'" by the BIA. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (quoting *Prieto-Romero*, 534 F.3d at 1059). If the BIA denies relief, detainees then may file a petition for habeas corpus in the district court. *Id*. (citing *Singh*, 638 F.3d at 1200–03).

III. *Vargas* Decision

Relying on a series of Ninth Circuit cases, this court determined in *Vargas* that procedural due process requires the government to bear the burden of proof in § 1226(a) bond hearings – that is, the government must prove by clear and convincing evidence that the detainee is dangerous or a flight risk. *Vargas*, 2020 WL 1929842, at *5-7 (discussing *Singh*, 638 F.3d at 1201-05; *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *rev'd in part sub. nom. by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); and *Aleman Gonzalez v. Barr*, 955 F.3d 762, 765 (9th Cir. 2020)). The court acknowledged these cases did not directly address the issue presented, but cited to numerous district court cases in this circuit that imposed the burden of proof on the government. *Id*. at *6 (citing *Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055

(N.D. Cal. 2020); *Singh v. Barr*, 400 F. Supp. 3d 1005, 1017-18 (S.D. Cal. 2019); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019); *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1033 n.8 (W.D. Wash. 2019); *Cortez v. Sessions*, 318 F. Supp. 3d 1134 (N.D. Cal. 2018); *Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1029–30 (N.D. Cal. 2018)).

The IJ had placed the burden of proof on Vargas to show she was not a danger to the community and the BIA affirmed that decision. Thus, the court concluded the bond proceedings in Vargas's case were constitutionally deficient. *Id*. at *8. The court further determined that the error was prejudicial because, considering her circumstances and evidence she had presented, "the IJ's bond determination could easily have been different if the government was required to prove dangerousness by clear and convincing evidence." *Id*. at *9.

In addition to resolving the burden of proof issue, the *Vargas* decision also addressed whether Vargas's prolonged detention entitled her to a hearing under *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the Supreme Court said the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333 (internal quotation marks and citation omitted). *Mathews* articulated a three-part test to determine whether established procedures provide constitutionally adequate due process. *Id*. at 334–35. Recognizing that "due process is flexible and calls for such procedural protections as the particular situation demands," the court must consider: (1) the private interest affected by government action; (2) the risk of an erroneous deprivation of the private interest through the procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the government's interest, including the function involved and the burdens that additional or alternative procedures would entail. *Id*. (internal quotation marks and citation omitted).

Applying the test in *Vargas*, the court concluded that being "detained for approximately 11 months without a constitutionally adequate bond hearing [was] sufficiently long to establish [Vargas's] strong private interest." *Vargas*, 2020 WL 1929842, at *10.  The court further found that "[Vargas's] situation clearly shows a risk of erroneous deprivation of her private interest through the IJ's use of a constitutionally deficient burden of proof" and that "a new bond hearing will safeguard against arbitrary deprivation of Petitioner's freedom from physical restraint." *Id*. And, finally, the court recognized the government's "significant interest" in "detaining individuals that pose a danger to the community," but determined that it was outweighed by Vargas's liberty interest. *Id*.

Having found "due process violations with respect to [Vargas's] continued detention," the court ordered the respondents to provide Vargas with "a new bond hearing in which the IJ requires the government to prove her flight risk or dangerousness, by clear and convincing evidence, to justify continued detention." *Id*. at *11.

IV. The Respondents Fail to Show Cause

In response to my order to show cause, the respondents argue I should dismiss de la Cruz's petition for the reasons previously asserted in their motion to dismiss and subsequent reply in support of the motion. ECF No. 18 (citing ECF No. 11 at 14–19 and ECF No. 13 at 4–12).  They contend that de la Cruz's right to due process has not been violated because she "received all of the statutorily and constitutionally-required process for a § 1226(a) alien detained on the basis of posing a danger to the community." *Id*.

More specifically, the respondents argue that the process provided by the IJ at de la Cruz's bond hearing comported with due process when assessed under the three *Mathews* factors.  Regarding the first factor, they contend that the court must consider that the Supreme

Court has never held that aliens have a constitutional right to be released from custody during the pendency of removal proceedings. While that may be so, this court noted in *Vargas* that the length of detention is a factor to be considered in assessing the detainee's private interest. *See Vargas*, 2020 WL 1929842, at *10; *see also Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (holding that eighteen-month detention was sufficiently onerous to establish strong private interest). Here, as in *Vargas*, the length of de la Cruz's detention (approximately a year) adds significant weight to her private interest.

For the second factor, the respondents argue that the existing procedures—with an initial determination by an ICE officer, a bond hearing before an IJ, and review by the BIA—protect against an erroneous deprivation of liberty while also protecting the government's interest in preventing aliens from absconding or committing crimes while removal proceedings are ongoing. This argument has merit if the IJ and BIA use the correct burden of proof when making the bond determination. As discussed in *Vargas,* however, the misapplication of the burden of proof can create a risk of erroneous deprivation of a detainee's private interest. *See Vargas*, 2020 WL 1929842, at *10. And the value of a second bond determination hearing using the correct burden of proof, as an alternative or additional procedure, is high. *Singh*, 400 F. Supp. 3d at 1022.

Regarding the third factor, the respondents cite to the government's interest in maintaining the existing procedures, which facilitate execution of removal orders and increase the probability that aliens who are ordered removed are in fact removed. Unquestionably, this interest is strong with respect to detainees who pose a flight risk or a danger to the community. It is far less so for those who do not, especially as the detention period lingers without a final removal determination. If the relief ordered by the court is merely a new bond hearing, the

government will have an opportunity to demonstrate that detention is warranted.  The respondents also contend that the detainee, not the government, is in the best position to provide evidence bearing on whether he or she is a flight risk or poses as danger to the community.  But if the government insists that de la Cruz poses a danger to the community, requiring the government to prove it does not significantly undermine its interest in maintaining effective removal proceedings.

The respondents also claim the court should not follow *Vargas* on the burden of proof issue.  They cite to various district court cases that, according to them, "reach[] the opposite conclusion." ECF No. 18 at 4-5 (citing *Manzanarez v. Holder*, 2013 WL 5607167, at *4 (D. Haw. Oct. 11, 2013); *Palma v. Asher*, 2014 WL 1089520, at *5 (W.D. Wash. Mar. 17, 2014); *Lule-Arredondo v. Holder*, 2014 WL 7340673, at *3 (W.D. Wash. Dec. 22, 2014); *Hernandez v. Lynch*, 2016 WL 7116611, at *4 (C.D. Cal. Nov. 10, 2016); *Palomar v. Sessions*, 2018 WL 903555, at *2 (E.D. Cal. Feb. 15, 2018)).  Having reviewed these cases, I conclude that the court's reasoning in *Vargas*, and the more recent district court cases *Vargas* cites, is more sound.

Finally, the respondents contend that de la Cruz cannot establish that she was prejudiced by the process she received.  They do not address, however, whether the outcome of her bond hearing would have been affected by holding the government to the higher standard of clear and convincing proof.  That is the pertinent inquiry. *See Singh*, 638 F.3d at 1205 (analyzing whether an IJ's application of an erroneous evidentiary burden at a bond hearing prejudiced the § 1226(a) detainee).

In finding de la Cruz to be a danger to the community, the IJ "considered [her] three domestic violence arrests between 2018 and 2019" that "resulted from physical altercations between [her] and her former husband." ECF No. 11-3 at 4.  The IJ noted that, "[a]ccording to

evidence in the record, two of those arrests resulted in a conviction for simple battery, while one remains pending before the state court." *Id*. at 4-5.[1] "Although an alien's criminal record is surely relevant to a bond assessment, ... criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." *Singh*, 638 F.3d at 1206 (citing *Guerra*, 20 I. & N. Dec. at 40).

Here, the only apparent victim in the three incidents relied upon by the IJ was de la Cruz's ex-husband. De la Cruz contends that the incidents did not result in any physical harm or injury and were "unfortunate reactions … due to emotional responses following a divorce" after a lengthy marriage. ECF No. 20 at 14. She further claims that she had no direct contact with her ex-husband between the date of the last incident on August 17, 2019 and her arrest on January 13, 2020. These contentions are not controverted by the respondents or the record. Without discounting the seriousness of domestic violence, I conclude that the IJ could have easily reached a different bond determination if the government was required to prove by clear and convincing evidence that de la Cruz was a danger to the community.

## CONCLUSION

The respondents have not shown cause why de la Cruz's circumstances are distinguishable from those of the petitioner in *Vargas* or why I should not follow *Vargas*. Thus, de la Cruz is entitled to habeas relief. As the court found in *Vargas*, I find that a new bond hearing conducted under the standard articulated in this order is more appropriate than immediate release.

---

[1] According to information provided by de la Cruz, the third arrest resulted in a conviction for simple misdemeanor trespass and simple battery. ECF No. 12-2.

I THEREFORE ORDER that petitioner de la Cruz's petition for writ of habeas corpus **(ECF No. 1) is GRANTED in part and DENIED in part**.

The respondents have **until January 29, 2021** to provide de la Cruz with a new bond hearing before an IJ. At that hearing, the government must prove, by clear and convincing evidence, that de la Cruz is a flight risk or a danger to the community to justify continued detention. If the government is unable to meet this heightened burden of proof, de la Cruz should be released on appropriate conditions.

I DENY De la Cruz's additional or alternative requests for relief.

Dated: January 7, 2021

U.S. District Judge Andrew P. Gordon